E-FILED
Friday, 08 March, 2019 12:27:22 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT

for the

Central District of Illinois

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Samsung SM-G930 Cell Phone, LG LS676 Cell Phone, Toshiba PF44GU Computer, Sharp Aquos 306 SH Cell Phone,

Case No. 19 - MJ - 06017

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the Central District of Illinois, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 2251 & 2252A | Production, Possession, Receipt, and Transportation of Child Pornography |

The application is based on these facts:

See Affadavit

☑ Continued on the attached sheet.

☐ Delayed notice of ______ days *(give exact ending date if more than 30 days:* ______ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

s/ Steve Smith
*Applicant's signature*

SFO, Steve Smith, USSS
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone *(specify reliable electronic means)*.

s/ Jonathan E. Hawley

Date: 3/8/19
*Judge's signature*

City and state: Peoria, IL

Jonathan E. Hawley, United States Magistrate Ju
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Investigator Steven C. Smith, being duly sworn, depose and state as follows:

1. I am a Detective with the Washington, Illinois, Police Department and I have been employed as a police officer since 2003. I am currently assigned as a Task Force Officer (TFO) with the Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) in Springfield, Illinois. As part of my responsibilities as an HSI TFO, I investigate criminal violations relating to child exploitation and child pornography, including violations pertaining to the illegal production, distribution, receipt and possession of child pornography, in violation of 18 U.S.C. §§ 2251, 2252, and 2252A. I have received training in the area of child pornography and child exploitation and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in various forms of media including computer media. I have received training in the area of peer-to-peer trading of child pornography and other files and child exploitation offenses. I have been the affiant for over 15 state search warrants and over 100 state arrest warrants. I have also participated in the execution of numerous state and federal search warrants that were based on alleged child exploitation and/or child pornography offenses.

2. As a federal Task Force Officer, I am authorized to investigate violations of the laws of the United States and to execute warrants issued under the authority of the United States.

3. The facts set forth in this affidavit are based on my personal knowledge and investigation. This affidavit is also based on knowledge I obtained from other individuals, including other law enforcement officers, my review of documents related to this investigation, communications with others who have personal knowledge of the events and circumstances described in this affidavit, and information gained through my training and experience.

4. I make this affidavit in support of a search warrant regarding the items collected during the execution of a state search warrant issued by Judge Stephen Kouri of the Tenth Judicial Circuit of Illinois on February 27, 209. These items, which are currently in evidence at the Washington Police Department, are more particularly described in Attachment A.

5. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause.

6. I respectfully submit there is probable cause to believe that violations of 18 U.S.C. §§ 2252 and 2252A, which make it a federal crime for any person to knowingly receive, distribute and possess child pornography, have been committed and that evidence, fruits and instrumentalities of these offenses, as more fully described in Attachment B, are present within the seized items listed in Attachment A.

## RELEVANT STATUTES

7. This investigation concerns alleged violations of 18 U.S.C. § 2252(a)(2)(A) which prohibits a person from knowingly receiving or distributing, any visual depiction using any means or facility of interstate or foreign commerce or that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproduces any visual depiction for distribution using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or through the mails, if the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and such visual depiction is of such conduct. A second relevant statute is 18

U.S.C. § 2252(a)(4)(B) which prohibits a person from knowingly possessing, or knowingly accessing with intent to view, 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and such visual depiction is of such conduct.

## PROBABLE CAUSE

### TAZEWELL COUNTY SHERIFF'S OFFICE INVESTIGATION OF DAVID P. JONES

8. Sergeant Ryan Tarby with the Tazewell County Sheriff's Office (TCSO) initiated a state investigation into David P. Jones (JONES) of East Peoria, Illinois for violating state child pornography laws. Sgt. Tarby initiated this investigation on or about November 7, 2018.

9. Sgt. Tarby initiated this investigation because the TCSO received CyberTipline Report # 41081588.

10. CyberTipline Report # 41081588 reported that Tumblr user burninghoundbanditspy uploaded three files that are believed to contain child pornography within the application Tumblr.

11. Based on his investigation, Sgt. Tarby obtained a search warrant signed by Judge Stephen Kouri of the Tenth Judicial Circuit of Illinois. This warrant, which was signed on February 27, 2019, commanded the search of 120 Donald Ct., East Peoria, Illinois, a 2011 Toyota Corolla, and the persons of Stephanie N. Jones and David P. Jones.

12. The search warrant authorized the seizure of any books, papers, records, photographs, recordings, documents, VHS tapes, CPUs and the contents there of, computer disks, computer tapes or other related software or media and the contents there of including but not limited to hard disk drives, USB storage devices, SD cards, micro SD cards, “thumb” or “jump” drive portable storage device, cameras, video camcorders, cell phones and the contents there of or other items which tend to evidence possession or control of the premises and related paraphernalia which have been used in the commission of, or which constitutes evidence of the offense of Possession of Child Pornography, in violation of Chapter 720, Illinois Compiled Statutes, 5/11-20.1, 2018, as amended.

13. On February 28, 2019, Sgt. Tarby planned to execute the aforementioned warrant signed by Judge Stephen Kouri on February 27, 2019. While doing so, Sgt. Tarby observed JONES driving JONES’ company car, a 2018 Ford. Sgt. Tarby made contact with JONES at the Casey’s General Store located at 101 Farmdale Road, East Peoria, Illinois.

14. Sgt. Tarby explained to JONES that he obtained the aforementioned warrant. Sgt. Tarby read the warrant to JONES. Sgt. Tarby also removed two phones from JONES’s person. The first phone was a black Samsung that JONES possessed in his hand, and the other being a white LG cell phone that JONES had in the front pocket of his hoodie style sweatshirt.

15. Sgt. Tarby explained to JONES he was going to transport him to the Washington Police Department (WPD) and discuss this. Sgt. Tarby also explained they were going to talk to Stephanie and search the home located at 120 Donald Ct., in East Peoria, Illinois.

16. JONES asked Sgt. Tarby if he could save him the time. Sgt. Tarby told JONES yes. JONES told Sgt. Tarby that everything he (Sgt. Tarby) is looking for is on the white phone.

17. Later that day, Sgt. Tarby and other Deputies with the TCSO, completed the execution of the state search warrant and seized the items listed in Attachment A.

**SGT. TARBY'S INTERVIEW WITH JONES AT THE WPD**

18. Prior to the interview with JONES at the WPD, Sgt. Tarby advised JONES of his *Miranda Rights* and JONES signed a *Miranda Waiver*.

19. During the interview, JONES gave law enforcement permission to search his LG cell phone, Samsung cell phone, Apple iPad, a laptop, and several Internet related accounts, including his Mega Cloud account and his MeWe social media account.

20. JONES acknowledged obtaining, sharing and storing digital files child pornography on the Internet using the using the application Wickr (within the application MeWe) and Mega.

21. JONES believed he has shared between 10 and 50 pictures containing child pornography over the Internet.

22. JONES acknowledged having between 50 and 100 files containing child pornography on his white in color LG cell phone.

23. JONES acknowledged he started viewing files containing child pornography around June or July of 2018.

24. Sgt. Tarby asked JONES how many photos and videos containing child pornography has he shared. JONES said he did not know because he sends other users web-link from the Mega Cloud account.

      a.     From my experience, this activity allows anyone with the web-links to view or download the folder associated with the web-link.

25.     JONES stated he has approximately 40gb of files containing child pornography in his cloud account.  Based on the totality of the circumstances, I believe JONES is referring to his Mega Cloud account.

**REVIEW OF JONES' INTERNET ACCOUNTS: MEGA CLOUD STORAGE and MeWe**

26.     With JONES' consent and Sgt. Tarby's permission, I accessed JONES' Mega Cloud account using the credentials JONES provided.  The URL is HTTPS://mega.nz

27.     I discovered this cloud account held approximately 13,981 files.  I viewed some of the files and concluded many of these files contained child pornography as defined by federal law.  I noted the following pertinent information for the account:

      a.     Email address is bj95694@gmail.com

      b.     Member since January 31, 2019

      c.     Overall usage is 44.89 GB of 65 GB

      d.     The name is listed as Bob Paul

      e.     The drive contained two parent folders: "i" and "master."  Each of these parent folders contained several children folders.

      f.     The number of files is listed as 13,891.

g.      The number of folders is listed as 199.

h.      The Rubbish Bin contains 234 files.

i.      The number of Public Links is 36.

j.      Session History IP Address shows IP address of 98.214.191.207 (Android Device on 2/6/2019 at 17:21), and IP address 99.203.14.30 (Android Device on 1/31/2019 at 11:50).

1.      I researched these IP addresses.  IP address of 98.214.191.207 is noted in Sgt. Tarby's search warrant.  According to that specific warrant, this IP address was leased to Stephanie Jones, 120 Donald Ct, East Peoria, IL  61611 on 10/11/18 at 13:49:06 UTC.

2.      IP address 99.203.14.30 is not listed in Sgt. Tarby's warrant. According to the Maxmind, this IP address belongs to Sprint PCS, which is who employees JONES.

28.      I know that Mega is based outside of the United States and does not have to accept or respond to legal request from the United States.  Because of that, I downloaded the Mega Sync application and synchronized David's files with my computer.  I changed the e-mail and password associated with this account to prevent file deletion.

29.      I copied these files from the Mega sync folder to another folder so I can review the files. Although I have not reviewed all the files, I did review some.  The following are some of the files I reviewed.  These files are listed by their name, MD5 Hash Value, and description.

3.      I searched this files MD5 Hash Value against the data from David's LG cell phone.  I did not locate this file.

30.      My review of the file in the Mega Cloud account revealed the following four photos (listed by name and MD5 Hash Value) of a person that I believe is JONES at file path: i\mix\2.

a.      20190122_164113.jpg, 830F9C896B21D282691C85FED72DEB89

b.      FB_IMG_1551133090514.jpg, 33F201308172220F1BB6D6FBAF73DE9C

c.      FB_IMG_1551133105556.jpg, AFC8AB1BC24A5440FFAEAB7BBF81EE9E

d.      FB_IMG_1551133200294.jpg, A7C562C7B21B17A2C92EA81CBB9E836F

31.      I searched this files MD5 Hash Value against the data from JONES' LG cell phone.  I located these files within the data from the LG cell phone.

32.      I viewed these files within JONES' Mega Cloud and learned they were added on February 25, 2019 at 16:25.

33.      With JONES' consent and Sgt. Tarby's permission, I accessed JONES' MeWe social media account using the credentials JONES provided.  The URL is HTTPS://MEWE.COM.

34.      My review of this account revealed JONES chatted with several other users. During one chat with user "ipoppin ba-by", JONES shared the following web-link, https://mega.nz/#!ZQ8w2ShK!cXjv7h_mWmoTh_TzHZs7xwypX0fS5C0tF3oDYrp1g1A.

35.     The information contained in this specific chat indicated JONES made this post Monday at 12:05 pm.  It is my belief, this information indicates JONES posted this link Monday, February 25, 2019 at 12:05 pm.

36.     I clicked on the web-link and it opened another webpage.  The page provided the opportunity for me to download the file, "просто находка!!!! .mp4". The file size is listed as 30.2 MB.

37.     I know from my training and experience, the web-link is link allowing a person to share a file from Mega Cloud.  I searched for the name of this file (просто находка!!!! .mp4) in the folder containing JONES' files from his Mega Cloud Storage.  The file is in JONES' Mega Cloud Storage.  I viewed this file within JONES' Mega Storage and observed it was added on January 31, 2019 at 12:07.  The file has an icon beside it.  From my experience with cloud applications, this icon indicates this file is being shared.

38.     I downloaded the file from the web-link and checked the files MD5 Hash value, which is 46A908C522DE58BE85B438001E3074AF.  I checked the MD5 Hash value of the file with the same name in JONES' Mega Cloud folder on my computer.  The file has the same hash value.

39.     I reviewed this file and below is my description:

        a.      This video file which last approximately 7 minutes and 26 seconds, starts by depicting a female, approximately 6 to 8 years old bent over.  The female is wearing a pink dress.  The female's vagina and anus are the focal point.  The video then shows the female laying down.  An adult male is shown inserting his erect penis into the female's vagina.  The male and female have vaginal sex in various positions. At approximately

the 2 minute and 05 second mark, the video depicts another female, approximately 6 to 8 years old. The female is wearing a black dress and is bent over a chair. The female's vagina and anus are the focal point. The female uses her hands to pull apart the opening of her vagina. This continues for several minutes. At approximately the 6 minute and 49 second mark, the video depicts another female laying down. The female is unclothed and has her legs spread, exposing her vagina and the anus. The female inserts her fingers inside her vagina for the remainder of the video.

40. I located JONES's MeWe icon photo (Professional Wrestler Ric Flair) on JONES's LG Cell phone. I made the match by visual comparison and not by hash value.

**FORENSIC REVIEW OF JONES' WHITE IN COLOR LG CELL PHONE**

41. JONES consented for law enforcement to search several of is electronic devices, including his white in color LG cell phone. JONES told Sgt. Tarby that everything he is looking for is on this device.

42. I conducted a digital forensic exam using software created by Cellebrite. I obtained a physical data extraction.

43. My review of the extracted data revealed the device contained hundreds of files containing child pornography.

44. I calculated the MD5 Hash Values for all the files from JONES' Mega Cloud account and compared it to the MD5 Hash Values of files within JONES' LG cell phone. The inquiry revealed JONES' phone contains 349 image files and 6 video files of those files.

45.    My review also revealed the following:

a.    The user accounts, names, username or handles on or associated with the device are: bj95694@gmail.com, livinggood79, Bobby James, and Mrtrouble79.

b.    An e-mail from the Google Community dated January 28, 2019 stating, "Google Hi Bobby, Welcome to Google. Your new account comes with access to Google products, apps, and services. Here's a few tips to get you started. GSA Stay in the know with the Google app Find"

c.    An e-mail dated January 31, 2019 from Notifications@mewe.com.  The subject line is "Quick! Confirm your email."  The body states, "Thanks for signing up, Paul!"

d.    An e-mail dated January 31, 2019 from Welcome@mega.nz.  The subject line is. "Welcome to MEGA."  The body states, "Welcome to MEGA Hi Bob, thanks for joining MEGA, your free account is ready and you can start using MEGA now. Warning: Due to our advanced end-to-end encryption, it is mathematically impossible for us to recover or reset your password. If you lose your password, you will lose access to the data in your MEGA account. We highly recommend you make a backup of your Recovery Key now:

e.    An e-mail dated January 31, 2019 from Dsullin100@gmail.com containing the following web-link," https://mega.nz/#F!Wy4TiYDK!CMZqlo7ZTrAhZV8NPTG2gA.  The link does not work.  Dsulling100@gmail.com sends another e-mail containing several links containing

the term mega. I clicked on one of the links. The links open up a webpage allowing a user to download files or save the files to the cloud.

f.      An e-mail dated February 6, 2019 sent by David to himself. The subject is, "Wickr." The body is "Wickrusernames.com."

h.      An e-mail dated February 9, 2019 from support@mega.nz. The subject is, "MEGA Install Bonus." The body states, "bj95694@gmail.com Great, thanks for installing the MEGA mobile app! It can take a few days for your installation achievement bonus to be authorised. Please note that you will not receive an achievement credit if you have used a different MEGA account in the past. To view the status of your achievements or achieve more, click below:

i.      Four e-mails dated February 19, 2019 David sent to himself. The first e-mail contains the subject line, "Massive Link", the second and third contains the subject line, "Big Links 2", and the final e-mail contains the subject line "Big Links 3". The body of these e-mails contain web-links from Box, Dropbox and Mega.

j.      An e-mail dated February 26, 2019 from support@mega.nz. The subject line is, "Your MEGA account needs more space!" The body indicates David's Mega cloud contains 67.88 GB, which is over his 65 GB storage limit.

k.      Chrome web history: www.Ice.gov/predator, www.stopchildpredators.org, and other links relating to child pornography and human trafficking. This search is dated February 26, 2019.

l.      Chrome web history for the Affidavit in Bart Huskey child porn case (http://www.northwestgeorgianews.com/affidavit-in-bart-huskey-child-porn-

case/article_89a08ef4-b5d7-5f94-9fb6-48208ee12e9e.html). The date associated with this web history is February 21, 2019.

46. Cellebrite Physical Analyzer did not parse the data for the application MeWe. Using Physical Analyzer, I was able to view the database file associated with the application MeWe. In the chat portion of the database, the times are stored in Unix Epoch Time, which is the number of seconds from January 1, 1970 UTC.

47. I observed the chat messages, which are consistent with the chat messages that I observed within MeWe when I manually reviewed JONES' account. JONES' handle is listed as P J3. This data shows that JONES sent the following link to user ipoppin ba-by on February 25, 2019 18:05 (UTC+0):

https://mega.nz/#!ZQ8w2ShK!cXjv7h_mWmoTh_TzHZs7xwypX0fS5C0tF3oDYrp1g1A. This is the same web-link that I observed within JONES' MeWE account.

48. I know from my research and experience that Mega Cloud Storage is a web-based cloud storage services that allows users to remotely store digital files. I know that Mega is located in New Zealand. I also know that Mega has mobile device applications for the Android and iOS platform.

49. I know that MeWe is a social media company based in San Francisco, California. MeWe offers applications for the Android and iOS platform.

## COMPUTERS AND CHILD PORNOGRAPHY

50. The information contained in this section is based upon my knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions.

51. Computers and computer technology have revolutionized the way in which child pornography is produced, distributed and utilized. Prior to the advent of computers and the Internet, child pornography was produced using cameras and film, resulting in either still photographs or movies. The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images. As a result, there were definable costs involved with the production of pornographic images. To distribute these images on any scale also required significant resources. The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public. The distribution of these wares was accomplished through a combination of personal contacts, mailings, and telephone calls, and compensation for these wares would follow the same paths. More recently, through the use of computers and the Internet, distributors of child pornography use membership-based/ subscription-based Web sites to conduct business, allowing them to remain relatively anonymous.

52. The development of computers has also revolutionized the way in which child pornography collectors interact with, and sexually exploit, children. Computers serve four basic functions in connection with child pornography: production, communication, distribution, and storage. The development of computers has changed the methods used by child pornography collectors in the following ways:

a.      Producers of child pornography can now produce both still and moving images directly from a common video or digital camera.  The camera is attached, using a device such as a cable, or digital images are often uploaded from the camera's memory card, directly to the computer.  Images can then be stored, manipulated, transferred, or printed directly from the computer.  Images can be edited in ways similar to how a photograph may be altered.  Images can be lightened, darkened, cropped, or otherwise manipulated.  The producers of child pornography can also use a device known as a scanner to transfer photographs into a computer-readable format.  As a result of this technology, it is relatively inexpensive and technically easy to produce, store, and distribute child pornography.  In addition, there is an added benefit to the pornographer in that this method of production does not leave as large a trail for law enforcement to follow.

b.      The Internet allows any computer to connect to another computer. By connecting to a host computer, electronic contact can be made to literally millions of computers around the world.  A host computer is one that is attached to a network and serves many users.  Host computers are sometimes operated by commercial ISPs, such as Comcast Communications and Mediacom, which allow subscribers connect to a network which is, in turn, connected to the host systems.  Host computers, including ISPs, allow e-mail service between subscribers and sometimes between their own subscribers and those of other networks.  In addition, these service providers act as a gateway for their subscribers to the Internet or the World Wide Web.

c.      The Internet allows users, while still maintaining anonymity, to easily locate (i) other individuals with similar interests in child pornography; and (ii) Web sites

that offer images of child pornography. Child pornography collectors can use standard Internet connections, such as those provided by businesses, universities, and government agencies, to communicate with each other and to distribute child pornography. These communication links allow contacts around the world as easily as calling next door. Additionally, these communications can be quick, relatively secure, and as anonymous as desired. All of these advantages, which promote anonymity for both the distributor and recipient, are well known and are the foundation of transactions between child pornography collectors over the Internet. Sometimes the only way to identify both parties and verify the transportation of child pornography over the Internet is to examine the recipient's computer, including the Internet history and cache to look for "footprints" of the Web sites and images accessed by the recipient.

       d.      The computer's capability to store images in digital form makes it an ideal repository for child pornography. A single computer media disk can store thousands of images. The size of the electronic storage media (commonly referred to as a hard drive) used in home computers has grown tremendously within the last several years. Hard drives with the capacity of 2 terabytes are not uncommon. These drives can store hundreds of thousands of images at very high resolution. Magnetic storage located in host computers adds another dimension to the equation. It is possible to use a video camera to capture an image, process that image in a computer with a video capture board, and save that image to storage in another country. Once this is done, there is no readily apparent evidence at the "scene of the crime". Only with careful laboratory examination of electronic storage devices is it possible to recreate the evidence trail.

**CHARACTERISTICS OF INDIVIDUALS WHO COLLECT IMAGES**

53. Based upon my own knowledge, experience, and training in child exploitation and child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals involved in the receipt and collection of child pornography:

a. Child pornography collectors may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

b. Collectors of child pornography may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Child pornography collectors oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c. Collectors of child pornography almost always possess and maintain their "hard copies" of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home or some other secure location. Child pornography collectors typically retain pictures, films, photographs, negatives,

magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years.

d. Likewise, collectors of child pornography often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area. These collections are often maintained for several years and are kept close by, usually at the collector's residence, to enable the collector to view the collection, which is valued highly.

e. Child pornography collectors also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

f. Collectors of child pornography prefer continuous access to their collection of child pornography. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

## CONCLUSION

54. On March 4, 2019, a Criminal Complaint for the Distribution of Child Pornography was filed in the United States District Court for the Central District of Illinois for the arrest of JONES. JONES was subsequently arraigned that day.

55. Based on the aforementioned factual information, your affiant respectfully submits that there is probable cause to believe that the violations of federal law mentioned in this Affidavit have been committed and that evidence, fruits and instrumentalities of these offenses, as more fully described in Attachment B, are present within the seized items listed in Attachment A.

s/ Steve Smith

STEVEN C. SMITH
Investigator, Washington Police Department
Task Force Officer DHS/ICE

Sworn to me over the telephone and signed by me pursuant to Fed.R.Crim.P. 4.1 and 4(d) on this 8th day of March, 2019.

s/ Jonathan E. Hawley

Jonathan E. Hawley
UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT A**

**ITEMS TO BE SEARCHED WHICH ARE CURRENTLY IN POSSESSION OF THE
WASHINGTON POLICE DEPARTMENT**

1.      Samsung SM-G930 Cell Phone

2.      LG LS676 Cell Phone

3.      Apple iPad

4.      Toshiba PF44GU Computer

5.      Sharp Aquos 306 SH Cell Phone

6.      Cruzer Glide 64GB Flash Drive

7.      Motorola MB855 Cell Phone

8.      Motorola XT907 Cell Phone

9.      Samsung SM-G9ZOV Cell Phone

10.     Sentry Safe

11.     HP M6-AQ103DX Laptop Computer

12.     Samsung SCH-I545 Cell Phone

13.     Samsung GT Tablet

14.     Olympus FE-370 Digital Camera

15.     SD Cards

16.     IOMEGA LPH0160 External Hard Drive

17.     JVC GZ Video Camcorder

## ATTACHMENT B

## ITEMS TO BE SEARCHED FOR AND SEIZED

1. Images of child pornography and files containing images of child pornography in any form wherever they may be stored or found.

2. Computer(s), computer hardware, software, related documentation, passwords, data security devices (as described below), videotapes, video recording devices, video recording players, and/or monitors. The following definitions apply to the terms as set out in this affidavit and attachment:

a) Computer Hardware

Computer hardware consists of all equipment which can receive, capture, collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, or similar computer impulses or data. Hardware includes any data-processing devices (including but not limited to central processing units; internal and peripheral storage devices such as fixed disks, external hard drives, floppy disk drives and diskettes, telephones and portable devices, and other memory storage devices); peripheral input/output devices (including but not limited to keyboards, printer, video display monitors, cable modems, wireless network routers, and related communications devices such as cables and connections), as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (including but not limited to physical keys and locks).

b)      Computer Software

Computer software is digital information which can be interpreted by a computer and any of its related components to direct the way they work. Software is stored in electronic, magnetic, or other digital form. It commonly includes programs to run operating systems, applications, and utilities.

c)      Documentation

Computer-related documentation consists of written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, software, or other related items.

d)      Passwords and Data Security Devices

Computer passwords and other data security devices are designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates a sort of digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software of digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress,

hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the progress to restore it.

3.      Any and all notes, documents, records, or correspondence pertaining to child pornography as defined under Title 18, United States Code, § 2256(8).

4.      Any and all diaries, address books, names, and lists of names and addresses of individuals who may have been contacted by use of the computer and/or for the purpose of distributing child pornography.

5.      Any and all correspondence identifying persons transmitting, through interstate commerce including by United States Mails or by computer, any visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, § 2256(2).

6.      Any and all records, documents, invoices and materials that concern any accounts with any Internet Service Provider.

7.      Any and all cameras, film, or other photographic equipment.

8.      Any and all visual depictions of minors.

9.      Any and all address books, mailing lists, supplier lists, mailing address labels, and any and all documents and records pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate commerce including by United States Mails or by computer, and visual depiction of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, § 2256(2).

10.     Any and all address books, names, and lists of names and addresses of minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, § 2256(2).

11.     Any and all documents, records, or correspondence pertaining to occupancy at SUBJECT PREMISES.

12.     Any and all cell phones, tablets, or mobile device and the content, data and information contained in said devices to include any storage media, such as SD cards and Micro SD cards and the like.

13.     Any and all diaries, notebooks, notes, and any other records reflecting personal contact and any other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, § 2256(2). Any of the items described in paragraphs 1 through 12 above which are stored in the form of magnetic or electronic coding on computer media or on media capable of being read by a computer with the aid of computer-related equipment, including floppy diskettes, fixed hard disks, or removable hard disk cartridges, software or memory in any form.